### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MADELYN COLE,

                CASE NO. 15-13292

      *Plaintiff*,        DISTRICT JUDGE STEPHEN J. MURPHY

*v.*                 MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

      *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 14, 15)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Cole is not disabled. Accordingly, **IT IS RECOMMENDED** that Cole's Motion for Summary Judgment (Doc. 14) be **GRANTED**, that the Commissioner's Motion for Summary Judgment (Doc. 15) be **DENIED**, and that this case be **REMANDED** for further consideration under sentence four of 42 U.S.C. § 405(g).

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner")

denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. § 401 *et seq*. (Doc. 7; Tr. 1-3). The matter is currently before the Court on cross motions for summary judgment. (Docs. 14, 15).

Plaintiff Madelyn Cole was fifty-three years old as of May 1, 2014, the date of the ALJ's decision. (Tr. 16, 151). Her application for benefits was initially denied on February 21, 2013. (Tr. 75). Cole requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Kevin J. Detherage on February 6, 2014. (Tr. 32-74). Cole, represented by attorney Stefanie Rossi, testified, as did vocational expert ("VE") Michelle Ross. (*Id.*). On May 1, 2014, the ALJ issued a written decision in which he found Cole not disabled. (Tr. 16-27). On August 7, 2015, the Appeals Council denied review. (Tr. 1-4). Cole filed for judicial review of that final decision on September 17, 2015. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

2

as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

3

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual

4

functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least 18 years old and has a disability that began before age 22 (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ found Cole not disabled under the Act. (Tr. 27). The ALJ found at Step One that Cole had not engaged in substantial gainful activity following the alleged onset date, March 10, 2011. (Tr. 21). At Step Two, the ALJ concluded that Cole had the following severe impairments: "cervical degenerative disease, chronic obstructive pulmonary disease ('COPD'), carpal tunnel syndrome, shoulder impingement, asthma, and obesity." (*Id*.). At Step Three, the ALJ found that Cole's combination of impairments did not meet or equal one of the listed impairments. (Tr. 22). The ALJ then found that Cole had the residual functional capacity ("RFC") to perform a limited range of light, unskilled work as follows:

5

She can occasionally stoop, kneel, crouch, and crawl. The claimant is unable to climb ladders, ropes, or scaffolds, it is occasionally able to climb ramps and stairs. She should avoid concentrated exposure to dust, fumes, gases, odors, or poorly ventilated areas. The claimant should avoid exposure to hazards, such as heights or machinery with moving parts. She can frequently handle and finger with the upper extremities. The claimant can frequently reach, including overhead reach with the upper extremities. She should avoid repetitive rotation, extension, reflection of the neck. The claimant is unable to perform production rate paced work.

(Tr. 23-25). At Step Four, the ALJ found that Cole could not return to her past relevant work as a cashier. (Tr. 25). At Step Five, the ALJ concluded that Cole retained the ability to perform work which exists in significant numbers in the national economy. (Tr. 26).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has thoroughly reviewed Cole's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary when discussing the parties' arguments.

#### 2.    Application Reports and Administrative Hearing

##### a.    Cole's Function Report

Cole completed a function report on January 1, 2013, in which she asserted that she suffered from carpal tunnel syndrome and resulting upper extremity weakness, constant pain, difficulty picking up small objects, "real bad headaches," and balance and falling episodes. (Tr. 198). Cole stated that she vacuumed, washed dishes, and swept the floor. (Tr. 199-200). However, she reported that these tasks took her longer than usual. (Tr. 200). Cole prepared complete meals daily, but spread this task throughout the day,

and sought help from her sons to lift heavy objects. (*Id*.). She wrote of difficulty with all postural and exertional activities, in addition to difficulty seeing, completing tasks, and using her hands. (Tr. 203). She could walk for "maybe a block and a half," and could resume walking after a ten to twenty minute rest. (*Id*.).

Cole was unable to stand for long periods of time, lift objects, or pick up small objects. (Tr. 200). She wrote of difficulty sleeping due to shoulder and neck pain. (*Id*.). In terms of personal care, she expressed difficulty buttoning clothing, brushing her hair, dropping silverware, sometimes fell in the shower, and had difficulty using the toilet when her "back goes out." (*Id*.). She walked with her sons regularly, but experienced substantial pain with that activity. (Tr. 201). She shopped in stores for personal items monthly, and for food bi-monthly. (*Id*.). She was able to visit stores without accompaniment. (Tr. 202).

Cole had no problems getting along with others, remembering to take medicine or perform personal care. (Tr. 200, 203). She reported requiring encouragement to perform chores, and that her sons would ask her to do their laundry or help them clean up the house. (*Id*.). She had no difficulty handling money. (Tr. 201). She did not require reminders to go places. (Tr. 202). She finished what she started. (Tr. 203). Cole had no difficulty following written instructions, but would take notes to assist in following oral instructions. (*Id*.). She had no difficulty with stress or authority figures. (Tr. 204).

Cole wrote that her hobbies included reading, watching movies, and watching her sons play computer games. (Tr. 202). Her arms would fall asleep while reading, and she

7

found it necessary to move around while watching movies lest she experience pain and falling. (*Id.*). She played internet games with friends once daily. (*Id.*).

Cole made use of glasses and a hand brace. (Tr. 204). She took only ibuprofen for treatment of pain. (Tr. 205). Finally, she reported difficulty holding pens due to hand pain, and noted that she was diagnosed with chronic glaucoma. (Tr. 205).

### c.      Cole's Testimony at the Administrative Hearing

At the February 6, 2014, hearing before the ALJ, Cole testified that in 2011 she transitioned from full time work to part time work because of pain in her shoulders, arms, and back. (Tr. 39). She last worked in 2012 as a janitor, but ceased that work when she found herself unable to lift garbage bags into a dumpster. (Tr. 37-38). She attributed her back pain to a specific incident where she threw trash into a dumpster and her back "went out." (Tr. 43).

Cole asserted that, had her hours not been cut by her employer, she would have continued to work full-time through February 2013. (Tr. 57). Cole sought employment at grocery stores through November 2013, but received no response to her inquiries. (Tr. 55). However, had she been awarded with full-time employment as a cashier, Cole hypothesized that she would not have been able to maintain that work, due to her "back and not being able to stand up for long periods of time," along with her tendency to drop things. (Tr. 60-61).

Cole asserted that she experienced pain in her arms and hands from carpal tunnel syndrome, that the vertebrae in her neck were "closing up," she experienced numbness in

8

her legs, along with arthritis and restless leg syndrome. (Tr. 41). Cole used inhalers daily to treat her COPD. (Tr. 43). As of the hearing, Cole was taking Neurontin and Flexeril for treatment of pain, and Topamax and Imitrex for her headaches. (Tr. 44).

Cole testified that she experienced headaches daily, which were "always there," but which varied in intensity. (Tr. 45).

Cole was able to lift a gallon of milk with two hands. (Tr. 45). When shopping for groceries, she used the cart to stabilize herself; she was able to lift groceries into the cart, but could not move them from the car to her home. (Tr. 45, 48). She was unable to walk one hundred yards. (*Id*.). Cole could stand or sit for fifteen or twenty minutes. (Tr. 46). Cole had a cane with her at the hearing, but noted that it was recently prescribed, and was used for stability because her "balance [was] off." (Tr. 47). Cole could not reach above her head to grab dishes. (Tr. 62).

Cole stated that on a typical day she would get up at 5:30AM, drop her sons off at school, make breakfast, clean the house, do laundry and dishes, and participate in her online college courses. (Tr. 48-49). She noted that her online classes took about four hours weekly, and that she took breaks to accommodate her hand pain. (Tr. 51). Cole's son would sometimes type her notes for her. (*Id*.). She would also walk around the house, take a hot shower, lie down, or nap for relief. (Tr. 58).

Cole asserted that she received pain relieving injections in the neck and back. (Tr. 64). She experienced numbness in all four extremities, particularly when sitting for long periods of time. (*Id*.).

9

### c.      The VE's Testimony at the Administrative Hearing

The ALJ then called upon the services of a VE to determine Cole's ability to perform work. (Tr. 65). The VE Found that Cole's past work as a cleaner was unskilled work performed at the medium level of exertion, and Cole's past work as a gas station manager was skilled work performed at the medium level of exertion. (Tr. 67).

The ALJ asked the VE to assume a hypothetical individual with Cole's age, education, and work experience, and who could perform light work, but who

> Can occasionally stoop, kneel, crouch or crawl; can never climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs; should avoid concentrated exposure to dust, fumes, gases, and odors of poorly ventilated areas; should avoid exposure to hazards such as heights or machinery with moving parts; can frequently handle and finger with the upper extremities; can frequently reach, including overhead, with the upper extremities; should avoid repetitive rotation, flexing or extension of the neck; and no production rate pace work.

(Tr. 67-68). The VE found that such a worker could not perform Cole's past relevant work. (Tr. 68). However, the VE found that such a worker could perform jobs available in the national economy, including machine tender (101,000 jobs nationally), line attendant (125,000 jobs), and counter clerk (258,000 jobs). (Tr. 68-69).

Cole's attorney then asked whether the worker identified in the first hypothetical would be able to perform jobs available in the national economy if that worker was further limited to "only occasional handling, fingering, feeling, manipulating with the upper extremity; only occasional overhead reaching with the bilateral upper extremities."

10

(Tr. 70-71). The VE found that such modified restrictions would preclude all previously identified jobs except machine tender. (Tr. 71). However, the VE also found that work as a hostess (257,000 jobs), or usher (50,000 jobs) would be available. (*Id*.). Cole's attorney then asked whether the addition of a sit/stand option would preclude the jobs identified; the VE confirmed that the machine tender position would remain. (*Id*.). Finally, the VE found that trading the sit/stand requirement for a limitation that the worker must use a cane while standing would be work-preclusive. (Tr. 72).

The ALJ then asked a second hypothetical question which included the prior restrictions, but which also included the need to take four ten minute breaks daily, in addition to the usual breaks afforded to workers. (Tr. 69). The VE found that such a restriction would be work-preclusive. (*Id*.).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both    "acceptable"    and    non-acceptable sources provide evidence to the Commissioner, often in the form of opinions

11

"about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions

12

entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a

14

claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20

15

C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.   Analysis

Cole argues that the ALJ erred by: 1) Understating the impact of her headaches; 2) Failing to evaluate several of her severe and non-severe impairments; 3) Improperly finding that Cole did not meet Listings 1.02b, 1.04, and 3.02A; and 4) Failing to evaluate Cole's symptoms as required by SSR 96-7p and 96-8p. (Doc. 14 at 11-16). These arguments will be addressed in turn.

### 1.   The ALJ Properly Evaluated Cole's Headaches

Cole first argues that the ALJ erred by understating the impact of her headaches, and insufficiently restricting her RFC to accommodate those headaches. (Doc. 14 at 11). The ALJ asserts that Cole's headaches were "well controlled;" Cole challenges that the medical record does not support this characterization. (*Id*.). On the contrary, Cole argues that her headaches "worsened with the neck injections." (*Id*.).

The medical record generally supports the ALJ's finding that her headaches were "well controlled;" Dr. Aparna Vallabhaneni used those very words to describe Cole's headaches on November 25, 2013. (Tr. 341). He also noted that she was "doing much better with the increase in the dose of Imitrex and Topamax." (*Id*.). Cole is correct that her more recent records from December 2013 and January 2014 demonstrate that her

16

headaches worsened with neck injections. (Tr. 499, 503). Yet her most recent record also establishes that the use of Topamax 100mg daily "decreased her headaches dramatically," and that "Fioricet can stop her headaches." (Tr. 499). In her function report, Cole noted only that she had "real bad headaches," but did not allege any specific limitations resulting from that malady. (Tr. 198). Likewise, at the hearing before the ALJ, Cole testified only that she had daily headaches of varied intensity, but did not make note of any limitations posed by her headaches. (Tr. 45). The medical record thus establishes that Cole's headaches could be brought under control through the use of medicine, and Cole herself put little emphasis on limitations resulting from headaches. Moreover, Cole makes no effort in her brief to identify any necessary limitation which the ALJ excluded from the RFC. To whatever extent Cole may still suffer from uncontrolled headaches, she has not established why the ALJ's limitation to unskilled, non-production-rate-paced-work, is insufficient to account for her pain and distraction. (Tr. 23).

### 2. The ALJ Did Not Properly Evaluate All of Cole's Severe and Non-Severe Impairments

Cole next argues that the ALJ "never evaluates the Plaintiff's degenerative arthritis of the left hand, degenerative changes in the left foot, peripheral neuropathy, degenerative disc disease of the lumbar spine, obstructive sleep apnea, restless leg syndrome, and bilateral eye glaucoma." (Doc. 14 at 11). Cole avers that these ailments are "simply never mentioned or evaluated in the decision." (*Id*. at 12).

17

At the outset, Cole is incorrect insofar as she alleges that the ALJ ignored her arthritis of the left hand, as the decision specifically considers that ailment. (Tr. 24). On the other hand, Cole is correct that the ALJ made no note of her peripheral neuropathy, sleep apnea, restless leg syndrome, glaucoma, or degenerative disc disease of the lumbar spine. The Commissioner is required to consider the combined effect of all the claimant's impairments, including those found to be severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B); SSR 96-8p. This rule recognizes that even "a non-severe impairment may still contribute to a finding that a claimant is disabled." *Patterson v. Colvin*, No. 5:14 CV 1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015). As a necessary predicate to applying this rule, the ALJ must determine whether a claimant's conditions are "impairments" in the first place.   Exertional impairments are those that affect the claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b). Non-exertional impairments are defined as "certain mental, sensory, or skin impairments" or "impairments [which] result solely in postural and manipulative limitations or environmental restrictions." 20 C.F.R. Part 404, Subpt. P, App. 2, Section 200.00(e).

An ALJ's failure to discuss some of a claimant's maladies may be harmless error where those maladies do not constitute "impairments" at all. For instance, the mere fact that a claimant treated for dyspepsia on several occasions does not establish that dyspepsia is an "impairment," because the condition may not have any impact on the claimant's ability to perform work. *See Boucek v. Astrue*, No. 08 CV 5152, 2010 WL

18

2491362, at *8 (N.D. Ill. June 16, 2010) ("That he did not describe every condition that [the claimant] now lists in her brief does not constitute error . . . especially where [the claimant] has not even attempted to demonstrate that any of the conditions she lists would restrict her ability to perform sedentary work . . . ."); *Flors v. Massanari*, No. 00 CIV 5767 GEL, 2002 WL 100631, at *5 (S.D.N.Y. Jan. 25, 2002) ("The ALJ is not required to cite and discuss each and every symptom or illness claimed by a disability claimant, only to consider the effect of all of his impairments.").

In this case, while Cole's medical records repeatedly note that she experienced glaucoma (Tr. 283, 341-43, 347, 353, 357, 361, 364, 399, 403, 407, 499, 503, 510), there is no indication that she experienced ocular limitations which might restrict her ability to perform work, or even to perform her hobbies or activities of daily living. While Cole marked in her function report that she had difficulty seeing (Tr. 203), she also wrote that she enjoyed watching movies, reading, using the computer, and watching her sons play computer games. (Tr. 202). Likewise, Cole complained of arm numbness while reading, she made no mention of any eye-related limitations whatsoever. (*Id.*). Cole did not mention any eye related limitations in her testimony before the ALJ. No medical record supports a finding that Cole was limited in any way by her glaucoma. If the ALJ's failure to discuss Cole's glaucoma was error, I suggest it was harmless.

Likewise, while numerous records mention that Cole suffered from sleep apnea (Tr. 341-43, 353, 399, 499, 503, 510), there is no indication that she experienced any limitation resulting from this ailment. In her function report, Cole wrote that she woke up

19

in pain due to pain in her upper extremities and neck, but made no mention of sleep apnea. (Tr. 199). Cole did not discuss sleep apnea at the hearing before the ALJ. Again, there is no indication that Cole suffered any limitation from her sleep apnea, thus the ALJ wisely did not list it amongst her impairments. No further discussion was necessary.

The Court cannot reach the same conclusion with regard to Cole's restless leg syndrome ("RLS"). Not only do numerous records mention Cole's RLS (Tr. 353, 357, 361, 364, 399, 407, 489-91, 499, 503, 510), several also discuss symptoms which might be expected to produce functional limitations. In November 2013 it was found that Cole's RLS was worsening, that she experienced "severe cramping of the muscles of hte [sic] lower extremities," and that use of Neurontin did not ameliorate that symptom. (Tr. 347). It was also noted that Cole needed to "walk and move around for about 10 minutes to get rid of the symptoms." (*Id.*). Another note drafted in December 2014 recorded that Cole's RLS was "worsening," and that she experienced spontaneous leg movements, an urge to move her legs, abnormal leg sensation, numbness, sleep disruption, fatigue, and daytime somnolence. (Tr. 489). Use of Neurontin and Klonopin were of no help, and other medications were rejected by her insurance. (*Id.*). Cole's medical records drafted in 2014 make little mention of RLS, aside from noting that she had a "past medical history" of RLS in January 2014. (Tr. 466). However, it is unclear whether Cole's RLS was resolved or simply not under treatment at that time. In any case, in light of records indicating that Cole's RLS caused sleep problems and daytime somnolence, which would likely impose limitations on Cole's ability to work. The ALJ thus should have evaluated whether this

20

ailment was a severe or non-severe impairment, and should have addressed how Cole's RLS symptoms might have limited her ability to perform work. The ALJ's failure to perform this analysis is error requiring remand.

The ALJ's failure to discuss Cole's peripheral neuropathy is similarly disconcerting. Cole wrote in her function report that she experienced falling and instability on occasion, and could walk less than two blocks. (Tr. 198, 200). At the hearing before the ALJ she complained of numbness in the legs, and claimed that she could walk less than one hundred yards. (Tr. 41). Looking to the medical record, it was repeatedly noted that Cole experienced "numbness" or "neuropathy" throughout her treatment sessions. (Tr. 326, 341-43, 347, 353, 361, 364, 396-97, 399, 403, 407, 475, 489-91, 499, 503, 510). In March 2011 Cole showed no difficulty with walking, and in September 2011 had no stability issues. (Tr. 278, 283). However by November 2013 Cole complained of difficulty walking, and in January 2014 experienced balance issues. (Tr. 396-97, 479). Given these complaints of difficulty walking and repeated findings of leg neuropathy, along with knee pain (Tr. 482), the ALJ ought to have evaluated how Cole's leg issues might impact her ability to perform work. Yet the ALJ does not specifically consider Cole's leg issues, and his analysis of Cole's walking ability is limited to noting that her "obesity does not affect her ability to ambulate effectively." (Tr. 25). This is also error requiring remand.

21

Cole does not specify which "degenerative changes in the left foot" the ALJ failed to address. The Court's review of the decision with regard to her ability to ambulate, *supra*, adequately addresses this concern.

Finally, Cole is also correct that the ALJ did not specifically discuss her degenerative disc disease of the lumbar spine. (Doc. 14 at 11). The ALJ did discuss her degenerative arthritis and degenerative disc disease of the cervical spine, along with degenerative anterolisthesesis, mild spurring, pain in multiple joints of the neck, decreased range of motion in the cervical spine. (Tr. 23-24). The ALJ makes no reference to Cole's alleged ailments of the lumbar spine, nor does he describe how her back ailments affect her functional limitations, nor the manner in which her alleged functional limitations are confirmed or challenged by the objective evidence.

On remand, the ALJ should review all of Cole's ailments, determine which can be characterized as severe or non-severe limitations, and should analyze these limitations and properly account for them in the RFC finding. The ALJ's analysis must be sufficiently thorough to permit meaningful review, and ought to either adopt Cole's alleged limitations, or explain why those limitations were not adopted.

### 3.    *The ALJ Properly Evaluated Whether Cole Met Listings 1.02b, 1.04, and 3.02A*

Cole next argues that the ALJ did not properly evaluate whether she met Listings 1.02B, 1.04, and 3.02A. (Doc. 14 at 12-13). It is the claimant's burden to show that she meets or medically equals an impairment in the Listings. *Evans v. Sec'y of Health &*

22

*Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). A claimant's failure to specifically detail, in a point-by-point fashion, how he or she meets a listing waives that argument. *See Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *14 (E.D. Mich. Mar. 31, 2014) ("Plaintiff bears the burden of establishing that he meets a particular listing and plaintiff's argument in this regard is not sufficiently developed such that the undersigned can make such a determination. Plaintiff cannot simply make the bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim.").

At the outset, Plaintiff mistakenly asserts that Listing 1.02B deals with carpal tunnel syndrome, when in reality that listing addresses joint dysfunction. Specifically, Listing 1.02B requires that a claimant have:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: . . . B. Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.02B. The ALJ noted this standard, and found that "the severity of the claimant's shoulder impingement does not rise to the level of this listing." (Tr. 22). Ignoring Cole's confusion regarding the substance of Listing 1.02B, she nevertheless makes no argument as to how she meets Listing 1.02B, nor does she cite any medical evidence to that end, and thus has waived any claim that she meets

said listing. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (holding that issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Cole's argument that she meets or equals Listing 1.04 is limited to noting that "the same questions arise" for the ALJ's evaluation of that listing. (Doc. 14 at 12). Cole's failure to identify any medical evidence demonstrating that she meets Listing 1.04 likewise waives any argument that she is disabled under that listing. *See Elder*, 90 F.3d at 1118.

Cole's argument that she meets Listing 3.02A is more substantial; she alleges that she meets that listing because her "pulmonary function testing demonstrated that [she] had FEV1[1] values of 0.99 at trial 4 and 0.92 at trial 5 which would be well within the listing requirement of 3.02A." (Doc. 14 at 13). Cole also notes that the "listing requirement for Plaintiff's height of 62 inches is 1.15." (*Id.*). Listing 3.02A provides that a claimant is disabled when they have "Chronic obstructive pulmonary disease, due to any cause, with the FEV1 equal to or less than the values specified in table I corresponding to the person's height without shoes." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 3.02A. The Listings also contain a table which provides that a person who is 62 inches tall meets Listing 3.02A if a spirometry examination reveals a FEV1 reading of 1.15. (*Id.*).

---

[1] FEV1 refers to the volume of air that can be forcibly exhaled from the lungs in the first second of a forced expiratory maneuver. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.00(A).

In response, the Commissioner correctly notes that, where multiple spirometry FEV1 examinations are given, the highest figure should be used when evaluating a claim under Listing 3.02A. (Doc. 15 at 13-14). The regulations specify that "[t]he reported one-second forced expiratory volume (FEV1) and forced vital capacity (FVC) should represent the largest of at least three satisfactory forced expiratory maneuvers." (20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00E). In this case, Cole completed an FEV1 test on at least three occasions, producing figures of 1.46, 0.99, and 0.92. (Tr. 300). The highest of these three figures must be used to evaluate her claim under Listing 3.02A. Cole's FEV1 result in "Trial 1" was 1.46, substantially higher than the 1.15 necessary to trigger Listing 3.02A. Cole is thus not disabled under any of the Listings.

### 4.    The ALJ's Failure to Evaluate SSR 96-7p and SSR 96-8p Factors Prevents Meaningful Review

Cole next argues that the ALJ failed to comply with SSR 96-7p[2], which requires that the ALJ evaluate the claimant's credibility in light of the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of pain or symptoms; factors that aggravate and precipitate the symptoms; the type, dosage, effectiveness, and side effects of any medication; non-medicinal treatment; other measures used to alleviate symptoms; and other factors concerning the claimant's limitations due to their symptoms. *See* SSR 96–7p, 1996 WL 374186, at *1–3 (July 2,

---

[2] SSR 96-7p was rescinded and superseded by SSR 16-3p on March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029, at *1. However, because the ALJ's decision in this matter was rendered prior to that date, the ALJ was obliged to comply with SSR 96-7p.

1996). Cole alleges that the ALJ "ma[de] no attempt to evaluate" these factors, and "never g[ave] any reasoning throughout the decision." (Doc. 14 at 14). Cole further asserts that "[n]ot one factors under SSR 96-7p is discussed by the ALJ." (*Id.*).

Review of the ALJ's decision demonstrates that these allegations are somewhat overstated. The ALJ thoroughly considered large tracts of the objective medical evidence, including records relating to Cole's neck, spine, lung, and arm maladies. (Tr. 23-24). He noted her use of steroid injections to relieve muscle pain and arthritic pain, Imitrex and Topamax to treat headaches, and the inhalants QVAR and Spiriva to treat COPD. (Tr. 21, 24-25). He also considered Cole's breathing difficulties resulting from COPD. (Tr. 24). He made note of Cole's allegation that she could lift only nine pounds, stand for ten to fifteen minutes, sit for fifteen minutes, and walk less than 100 yards. (Tr. 23). The ALJ also asserts that he crafted an RFC to account for Cole's pain and obesity and the resulting limits on her postural activities, limited her to "light" work due to the combination of her symptoms, limited her environmental exposure due to her asthma and COPD, her manipulative activities due to her shoulder impairment and carpal tunnel syndrome, and the use of her neck due to her cervical degenerative disc disease. (Tr. 25).

The ALJ did not, however, explicitly discuss how Cole's alleged shoulder, neck, back, leg, and arm pain limited her ability to lift, sit, stand, walk, or perform other postural and exertional activities, nor whether her medication was effective in treating that pain. The reader is left to guess as to how the ALJ's RFC finding accounts for Cole's limitations. The ALJ fails to discuss Cole's activities of daily living. The decision also

26

lacks any discussion of Cole's alleged balance and falling issues, which she prominently discusses in both her function report and testimony before the ALJ. (Tr. 45-48, 198).

The Court acknowledges that credibility decisions rest with the ALJ, *see Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987), and that an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Nevertheless, where the ALJ finds that the claimant's alleged limitations are not fully credible, he is obligated to explain how he reached that determination in sufficient detail to permit meaningful review. The Sixth Circuit has held that "blanket assertions that the claimant is not believable will not pass muster," and that discussion of why the claimant's statements are not fully credible is particularly important "where subjective pain complaints play an important role in the diagnosis and treatment of the condition." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

The ALJ asserts that Cole is not entirely credible because her alleged symptoms do not fully square with the objective evidence, but provides no justification for this boilerplate conclusion. (Tr. 23). This conclusion is insufficient to permit meaningful review, and remand is necessary to correct this error. *See Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *11 (E.D. Mich. June 18, 2012) (remanding for further consideration where the ALJ rejected a claimant's assertions of fatigue,

27

drowsiness, and lifting limitations, without consideration of the factors listed in SSR 96-7p).

Cole also argues that the ALJ did not comply with SSR 96-8p, which states that the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996). This argument treads the same ground as Cole's claim under SSR 96-7p, and the above discussion of the ALJ's failure to explain his credibility findings adequately addresses Cole's concerns here. The ALJ adequately discussed much of the medical evidence, but simply failed to discuss or account for Cole's activities of daily living, her alleged symptoms, including walking issues, and the treatment of her neck, back, leg, and arm conditions.

In summation, the ALJ adequately explained why he concluded that Cole's headaches were well managed and thus did not require accommodation in the RFC finding. Cole has failed to carry her burden in establishing that she met any listing, thus the ALJ's decision stands in that regard. The ALJ did not, however, discuss all of Cole's severe and non-severe impairments. Likewise, the ALJ did not properly consider the factors under SSR 96-7p and 96-8p, and the failure to discuss or account for Cole's daily activities, her alleged limitations, and the details of her pain and pain management prevents meaningful review. I therefore recommend that these errors mandate remand for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**H.    Conclusion**

For the reasons stated above, the Court **RECOMMENDS** that Cole's Motion for Summary Judgment (Doc. 11) be **GRANTED**, the Commissioner's Motion (Doc. 12) be **DENIED**, and that this case be **REMANDED** for further consideration under sentence four of 42 U.S.C. § 405(g).

**III.    REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

29

*Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 17, 2016                          S/ PATRICIA T. MORRIS
                                               Patricia T. Morris
                                               United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: June 17, 2016                           By s/Kristen Krawczyk
                                               Case Manager

30